United States District Court
Southern District of Texas
**ENTERED**
August 04, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GORADIA FAMILY INTERESTS, LTD., et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-16-0736 |
| SUNOCO, INC., et al., | § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Goradia Family Interests, Ltd., Goradia Capital, LLC, Vijay P. Goradia, Hemant P. Goradia, Individually and as Trustee of the Vijay P. Goradia 2003 Trust, Marie G. Goradia, as Trustee of the Vijay P. Goradia 2003 Trust, Alexandrina Barretto, Indra P. Goradia, Sapphira Goradia, as Trustee of the Vijay P. Goradia 2003 Trust, Ajay Jain, as Trustee of the Ajay Jain 2006 Trust, Manish Jain, as Trustee of the Manish Jain 2006 Trust, and Gorvest, L.P. (collectively, "Plaintiffs"), filed this action on February 11, 2016, in the 333rd District Court of Harris County, Texas, Cause No. 2016-08640, against defendants, Sunoco, Inc., Sunoco, Inc. (R&M) ("the Sunoco defendants"), Edward King, and David Sexton asserting claims for common law fraud, fraudulent inducement to invest, fraudulent concealment, and negligent misrepresentation. On March 20, 2016, defendants filed Defendants' Notice of Removal (Docket Entry No. 1). On March 28, 2016, the court entered an Order to Amend Notice of Removal to Allege Facts

Establishing Subject Matter Jurisdiction (Docket Entry No. 7). On April 13, 2016, defendants filed Defendants' Amended Notice of Removal (Docket Entry No. 12). Pending before the court is Plaintiff's Motion to Remand (Docket Entry No. 14). For the reasons explained below, the motion to remand will be granted.

## I.   **Factual and Procedural Background**

Plaintiffs initiated this action against defendants on February 11, 2016, by filing an Original Petition ("Petition"), in the 333rd District Court of Harris County, Texas, Cause No. 2016-08640.[1]   The Petition summarizes the parties dispute as follows:

> 19.  This action arises out of Defendants' scheme to deceive Plaintiffs into investing tens of millions of dollars into the formation of Haverhill Chemicals LLC for the purchase of Defendants' purportedly "state of the art" and "best in class" phenol, acetone and bisphenol A ("BPA") chemical manufacturing plant located in Haverhill, Ohio (the "Chemical Plant"). This fraudulent scheme -- whereby Defendants grossly misrepresented the condition and reliability of the equipment, as well as the needed capital expenditures for the Chemical Plant -- induced Plaintiffs to invest a total of about $48 million into Haverhill Chemicals LLC for the Chemical Plant.
>
> 20.  Plaintiffs subsequently learned that Defendants had intentionally misrepresented the condition and reliability of the Chemical Plant as well as the cost of maintaining the Chemical Plant properly. Defendants deceived Plaintiffs in part by claiming Sunoco had dramatically reduced capital expenditures at the Chemical Plan in recent years because the Plant purportedly required less capital

---

[1]Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 12-2.

to operate reliably and safely, when in fact the reason for the reductions was an effort to make the asset appear more attractive financially and for sale. Sunoco misrepresented that these skeletal capital budgets were reasonable expectations of what Plaintiffs would have to spend going forward to maintain properly its reliable operation.

21. To the contrary, the lack of adequate funding had instead caused the condition of the Chemical Plant to deteriorate significantly and become largely unreliable. Yet, Defendants concealed these facts by failing to provide relevant documentation in due diligence showing the actual condition of the Chemical Plant. Only years later did Plaintiffs discover extensive documentary evidence that Defendants had failed to disclose which indicated the actual condition of the plant, showing that critical equipment had already exceeded its useful life and had already begun to cause extensive loss of production time.

22. In an effort to salvage their investment, Plaintiffs were forced to contribute tens of millions of additional capital to fund unexpected and unbudgeted capital expenditures. Ultimately, however, the condition of the Chemical Plant had deteriorated so dramatically that Haverhill Chemicals LLC was forced into bankruptcy. In bankruptcy, the plant was purchased for $3 million. Plaintiffs lost their entire investment.[2]

Based on these and other more detailed allegations of fact, plaintiffs' Petition asserts claims against all defendants for common law fraud, fraudulent inducement to invest, fraudulent concealment, and negligent misrepresentation.[3]

---

[2]Id. at 4-5 ¶¶ 19-22. Page numbers contained in citations to the Petition and to the parties' briefs refer to the native page numbers at the bottom of the page.

[3]Id. at 25-29 ¶¶ 111-130.

Sexton was served with citation on February 20, 2016, the Sunoco defendants were served with citation on February 22, 2016, and King was served with citation on February 29, 2016.[4]

On March 20, 2016, defendants filed an Original Answer, asserting a general denial of plaintiffs' allegations,[5] and a Notice of Removal asserting: "There is complete diversity of citizenship between the parties to this lawsuit."[6] On March 28, 2016, the court entered an Order to Amend Notice of Removal to Allege Facts Establishing Subject Matter Jurisdiction (Docket Entry No. 7). On April 13, 2016, defendants filed Defendants' Amended Notice of Removal (Docket Entry No. 12), in which they again alleged diversity jurisdiction asserting that plaintiffs are citizens of Texas or Delaware, the Sunoco defendants are citizens of Pennsylvania, and defendants King and Sexton — both former employees of Sunoco who now live in Texas — are improperly joined because plaintiffs are unable to establish a cause of action against them in state court. On April 13, 2016, plaintiffs also filed the pending motion to remand (Docket Entry No. 14).

---

[4]Exhibit B to Amended Notice of Removal, Docket Entry No. 12-3.

[5]Exhibit C to Amended Notice of Removal, Docket Entry No. 12-4.

[6]Notice of Removal, Docket Entry No. 1, p. 3 ¶ 12.

## II.  **Plaintiffs' Motion to Remand**

Asserting that plaintiffs are unable to establish a cause of action in state court against the non-diverse defendants, King and Sexton, defendants argue that removal is proper and that this action should not be remanded.   Defendants argue that plaintiffs are unable to establish a cause of action in state court against King and Sexton  because (1) plaintiffs lack standing to sue, (2) they disclaimed reliance on any representations, and (3) the statutes of limitations for plaintiffs' claims have expired.[7] Plaintiffs argue that this action should be remanded because defendants' arguments that they are unable to establish a cause of action in state court against King and Sexton are affirmative defenses that not only lack merit but also apply equally to all defendants and are therefore incapable of establishing improper joinder.[8]  Plaintiffs argue that

> [t]he fact that **all** [d]efendants do and will assert these
> same merits defenses, and not just Sexton and King, is
> set forth clearly in the Defendants' Amended Notice of
> Removal, at 4, ¶ 15, where "Defendants do not waive any
> defenses that may be available to them (including without
> limitation the Plaintiffs' lack of standing . . . the
> Agreement's disclaimer clause . . . and limitations)."[9]

---

[7]Defendants' Amended Notice of Removal ("Amended Notice of Removal"), Docket Entry No. 12, p. 6.

[8]Plaintiffs' Motion to Remand, Docket Entry No. 14, p. 5. Although lack of standing is not an affirmative defense under federal law, see Miraglia v. Supercuts, Inc., No. 15-3017, 2015 WL 7451208, at * 3 (E.D. La. November 23, 2015), "[l]ack of standing is an affirmative defense" under Texas law. Faulkner v. Bost, 137 S.W.3d 254, 259 (Tex.App.-Tyler 2004, no pet.).

[9]Id. at 6. (emphasis added)

## A.    Standards of Review

A civil action pending in state court may be removed by the defendant to federal court if the federal court has original jurisdiction.  28 U.S.C. § 1441(a).  The original jurisdiction of federal courts is limited because they possess only the power authorized by the Constitution and statute.  Kokkonen v. Guardian Life Insurance Co. of America, 114 S. Ct. 1673, 1675 (1994).  One such authorization is 28 U.S.C. § 1332(a)(1), which confers jurisdiction on federal district courts over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States."  Under this statute "citizens of different States" means that each plaintiff must be diverse from each defendant.  Owen Equipment & Erection Co. v. Kroger, 98 S. Ct. 2396, 2402-03 (1978) (citing Snyder v. Harris, 89 S. Ct. 1053, 1057-08 (1969)).  "[A]ny doubt about the propriety of removal must be resolved in favor of remand."  Gasch v. Hartford Accident & Indemnity Co., 491 F.3d 278, 281-82 (5th Cir. 2007).

Although diversity jurisdiction requires complete diversity, a non-diverse defendant may be disregarded for the purpose of establishing diversity jurisdiction if the non-diverse defendant was improperly joined.  Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011) (citing McDonal v. Abbott Laboratories, 408 F.3d 177, 183 (5th Cir. 2005)).  The burden to

show improper joinder is on the removing party, and is a heavy one. Id. (citing Griggs v. State Farm Lloyds, 181 F.3d 694, 699 (5th Cir. 1999)). The removing party can establish improper joinder by showing either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Id. (quoting Smallwood v. Illinois Central R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc), cert. denied, 125 S. Ct. 1825 (2005)). Defendants rely only upon the latter showing.

To succeed, defendants must demonstrate that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id. (quoting Smallwood, 385 F.3d at 573). "If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of all defendants." Id. (citing McDonal, 408 F.3d at 183, and Smallwood, 385 F.3d at 575). "There is no improper joinder if the defendants' showing 'compels the same result for the resident and nonresident defendants,' because this simply means that 'the plaintiff's case is ill founded as to all of the defendants.'" Id. (quoting McDonal, 408 F.3d at 183; Smallwood, 385 F.3d at 574). "Such a defense is more properly an attack on the merits of the claim[s],

rather than an inquiry into the propriety of the joinder of the in-state defendant." Id.

The standard for evaluating a claim of improper joinder is similar to that used for evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), i.e., the court looks initially at the allegations of the complaint to determine if it states a claim under state law against the non-diverse defendant. Campbell v. Stone Ins., Inc., 509 F.3d 665, 669 (5th Cir. 2007). Ordinarily, there is no improper joinder if a plaintiff can survive a Rule 12(b)(6) challenge. Smallwood, 385 F.3d at 575. There are cases, however, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry. Smallwood, 385 F.3d at 573. "A summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." Id. at 573-74. Courts analyzing claims of improper joinder should not proceed into a resolution of the merits. Id. at 574.

Even if plaintiffs successfully set forth allegations upon which the court may reasonably predict that they might be able to recover against the non-diverse defendants, defendants may show improper joinder by establishing an affirmative defense. See Sid

Richardson Carbon & Gasoline Co. v. Interenergy Resources Ltd., 99
F.3d 746, 753 (5th Cir. 1996) (recognizing that if a defendant
establishes an affirmative defense, "it necessarily follows that
joinder was [improper]").   If, however, there is any reasonable
possibility that a plaintiff might survive an affirmative defense,
then no improper joinder exists and the case must be remanded.   Id.
"In conducting this inquiry, the court 'must also take into account
all unchallenged factual allegations, including those alleged in
the complaint, in the light most favorable to the plaintiff.'"
Campbell, 509 F.3d at 669 (quoting Ross v. Citifinancial, Inc., 344
F.3d 458, 463 (5th Cir. 2003)).   All contested factual issues and
ambiguities of state law must also be resolved in favor of the
plaintiff.   Gasch, 491 F.3d at 281.

Because when drafting pleadings "'state court plaintiffs
should not be required to anticipate removal to federal court, the
court assesses the sufficiency of the factual allegations of [the
plaintiffs'] complaint under Texas' notice pleading standard.'"
Arana v. Allstate Tex. Lloyds, 2013 WL 2149589, at *3 (N.D. Tex. 1
May 17, 2013) (quoting Warren v. State Farm Mut. Auto. Ins. Co.,
2008 WL 4133377, at *4 (N.D. Tex. 1 Aug. 29, 2008)).   Under the
Texas Rules of Civil Procedure, a petition must contain "a short
statement of the cause of action sufficient to give fair notice of
the claim involved."   Tex. R. Civ. P. 47(a).   "That an allegation
. . . be of legal conclusion shall not be grounds for an objection

when fair notice to the opponent is given by the allegations as a whole." Tex. R. Civ. P. 45(b).  Texas' "fair notice" pleading standard "looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 896 (Tex. 2000).

## B.   Application of the Law to the Alleged Facts

### 1.   Defendants' Removal is Based on Three Arguments that Apply Equally to All Defendants

Defendants make three arguments for why removal is proper: (1) lack of standing,[10] (2) disclaimer of reliance,[11] and (3) limitations.[12] Each argument is based upon an alleged inability of Plaintiffs to state a claim against not just the individual non-diverse defendants, King and Sexton, but instead on an alleged failure to state a claim against any defendant.  Plaintiffs argue:

> As to standing, Defendants allege that Plaintiffs' claims against all Defendants, not just Sexton and King, belong solely to Haverhill Chemicals LLC, and are not individual claims of the Plaintiffs. . . As to disclaimer, Defendants wrongly allege that Plaintiffs disclaimed reliance on any representations by Defendants, including Sexton and King, in the Asset Purchase Agreement between Haverhill Chemicals LLC and the Sunoco entity Defendants, even though Defendants admit that Plaintiffs are not parties to that Agreement, and also wrongly claim that no

---

[10]Amended Notice of Removal, Docket Entry No. 12, pp. 6-9.

[11]Id. at 10-15.

[12]Id. at 15-16.

representations were made by any Defendant to any
Plaintiff that owned an interest in Haverhill Chemicals,
LLC. . . Finally, with regard to limitations, Defendants
argue that because the misrepresentations and resulting
investments were made in 2011, that the claims are time-
barred, which also would apply equally to all Defendants.
. . The fact that all Defendants do and will assert these
same merits defenses, and not just Sexton and King, is
set forth clearly in the Defendants' Amended Notice of
Removal, at 4, ¶ 15, where "Defendants do not waive any
defenses that may be available to them (including without
limitation the Plaintiffs' lack of standing . . . the
Agreement's disclaimer clause . . . and limitations)."[13]

Citing <u>Smallwood</u>, 385 F.3d at 568, plaintiffs argue that defendants

are therefore unable to show improper joinder.[14] In <u>Smallwood</u>, 385

F.3d at 574, the Fifth Circuit stated that

when, on a motion to remand, a showing that compels a
holding that there is no reasonable basis for predicting
that state law would allow the plaintiff to recover
against the in-state defendant necessarily compels the
same result for the nonresident defendant, there is no
improper joinder; there is only a lawsuit lacking in
merit. In such cases, it makes little sense to single
out the in-state defendants as "sham" defendants and call
their joinder improper. In such circumstances, the
allegation of improper joinder is actually an attack on
the merits of plaintiff's case as such — an allegation
that, as phrased by the Supreme Court in <u>Chesapeake &
[Ohio Railway] Co. v. Cockrell</u>, "the plaintiff's case
[is] ill founded as to all the defendants."

385 F.3d at 574 (quoting <u>Chesapeake</u>, 34 S.Ct. 278, 280 (1914)).

Defendants do not dispute that the <u>Smallwood</u> exception to

improper joinder applies to their arguments based on standing and

contractual disclaimer of reliance. But citing <u>Boone v. Citigroup</u>,

---

[13]Plaintiffs' Motion to Remand, Docket Entry No. 14, p. 6.

[14]<u>Id.</u> at 7.

-11-

Inc., 416 F.3d 382, 388-90 (5th Cir. 2005), defendants respond that the Smallwood exception does not apply here because the "statutes of limitations necessarily expired at <u>different</u> times for different [d]efendants."[15]   In Boone the Fifth Circuit emphasized that the Smallwood "common defense doctrine" only applies where the showing that forecloses the plaintiff's claims against the non-diverse defendant necessarily and equally compels foreclosure of all of the plaintiff's claims against all of the diverse defendants.   The Fifth Circuit declined to apply the Smallwood doctrine for two reasons.   First, the plaintiffs conceded that their claims against the diverse defendants were not all premised on the same theories of liability.   Id. at 391.   The court concluded, therefore, that not all of the claims against the diverse defendants would necessarily be disposed of with the claims against the non-diverse defendants.   Id. at 392.   Second, while both the diverse and the non-diverse defendants asserted the affirmative defense of limitations, the Fifth Circuit held that this was not a "common defense" in the particularized sense meant by Smallwood because the plaintiffs argued that limitations was tolled by the pendency of a class action lawsuit in which two of the diverse defendants but none of the non-diverse defendants had been named as defendants. Id.   Stating that "it is facially obvious that the pendency of

---

[15]Defendants' Response to Plaintiffs' Motion to Remand, Docket Entry No. 16, p. 14.

the [class action] suit could not toll limitations as to any of the resident defendants," id., but that "the tolling issue . . . cannot be resolved on that basis as to the diverse defendants because at least two of them were named defendants in the [class action] suit," id., the Fifth Circuit held that

> at least for this reason, the showing that limitations bars the suit against all the resident defendants does not (as Smallwood [] requires for its "common defense" doctrine to apply) "equally" and "necessarily" "compel" the conclusion that limitations bars the entire suit against "all" the non-resident defendants.

Id.

In Boone the plaintiffs argued that because all defendants were depending on a limitations defense, Smallwood required remand. Id. at 388. Observing that the defendants' acts triggered different tolling provisions, the court however distinguished the limitations arguments advanced by the diverse defendants from those advanced by the non-diverse defendants, and held that the Smallwood exception did not apply. Id. at 390. Boone is thus distinguishable from this case because here the claims against the diverse and the non-diverse defendants are based on the same — not different — theories of liability, and although defendants argue that "[b]ecause King and Sexton allegedly made discrete misrepresentations to Plaintiffs, the statutes of limitations against them began to run on different dates and, thus, necessarily

-13-

expired at different times,"[16] defendants have neither argued nor made any showing that the statutes of limitations and tolling provisions applicable to the claims asserted against the non-diverse defendants, King and Sexton, differ from those applicable to the diverse defendants.

Defendants' reliance on <u>Boone</u> is misplaced because the limitations defense asserted there was not common to all defendants. In contrast, the defendants in this case argue that

> at the very least, the statute of limitations for [p]laintiffs' fraud claim expired on October 30, 2015. But plaintiffs filed suit on February 11, 2016. . . And because the statute of limitations has passed and Plaintiffs chose not to plead the discovery rule or fraudulent concealment, Plaintiffs can assert no claim for fraud, "fraudulent inducement to invest," fraudulent concealment, or negligent misrepresentation against Sexton or King.[17]

Because plaintiffs' claims against the diverse Sunoco defendants are based on misrepresentations made by King and Sexton acting within their capacity as Sunoco employees, defendants' limitations argument would apply with equal force to the diverse and non-diverse defendants, alike. The Fifth Circuit's holding in <u>Smallwood</u> therefore persuades the court that defendants have not shown improper joinder based on limitations.

Because defendants' arguments of standing, contractual disclaimer of reliance, and limitations apply equally to all of the

---

[16]<u>Id.</u>

[17]<u>Id.</u> at 7.

defendants, not merely to the non-diverse defendants, King and Sexton, <u>Smallwood</u> is directly on point.   Accordingly, the court concludes that this action must be remanded regardless of the merits of defendants' arguments because none of these arguments are capable of establishing that the non-diverse defendants have been improperly joined to defeat federal jurisdiction. <u>See   Huckaby v. Gans & Smith Insurance Agency, Inc.</u>, 293 F.Supp.2d 715, 717, 720-21 (E.D. Tex. 2003)(granting motion to remand because lack of standing and limitation defenses applied to claims against both resident and non-resident defendants alike); <u>Kelley v. Wells Fargo, N.A.</u>, Cause No. 1:13CV354-LG-JMR, 2013 WL 6178243, * 2 (S.D. Miss. November 22, 2013)(holding that a determination the plaintiff lacked standing to file the claims asserted would reach the merits of the lawsuit, not joinder); <u>Boyer v. Snap-On Tools Corp.</u>, 913 F.2d 108, 112-13 (3rd Cir. 1990) (cited with approval in <u>Smallwood</u>, 342 F.3d at 403-05, for holding that district court erred by finding fraudulent joinder based on contractual release defense because that defense was equally applicable to both diverse and non-diverse defendants alike).   Alternatively, for the reasons stated below, the court concludes that this action must be remanded because a reasonable possibility exists that plaintiffs might survive each of defendants' three arguments.

2.    <u>Reasonable  Possibility  Exists  that  Plaintiffs  Might
Survive All Three of Defendants' Affirmative Defenses</u>

(a)   Standing

Citing <u>Wingate v. Hajdik</u>, 795 S.W.2d 717, 719 (Tex. 1990), and

asserting that "[t]he proper owner of the claim — if any claim

exists — is Haverhill LLC, through the bankruptcy trustee,"[18]

defendants argue that "[p]laintiffs lack standing to sue."[19]

Defendants explain:

> Plaintiffs allege that they were fraudulently induced to
> form Haverhill LLC and purchase the Haverhill, Ohio
> plant. . . Although Plaintiffs attempt to artfully plead
> their case as an individual claim, their assertions are
> that [d]efendants misrepresented the condition and
> reliability of the Chemical Plant as well as the cost of
> maintaining the Chemical Plant properly . . . But . . .
> only the legal entity that owns the property may sue for
> **damage** to that property. . . Here, it is Haverhill LLC
> that **owned** the Haverhill, Ohio plant. . . Thus, it is
> only Haverhill LLC who can sue for **damage** relating to the
> Haverhill, Ohio plant.[20]

In <u>Wingate</u>, 795 S.W.2d at 719, the Texas Supreme Court held that

"[a] corporate stockholder cannot recover damages personally for a

wrong done solely to the corporation, even though he may be injured

by that wrong."  <u>See 7547 Corp. v. Parker & Parsley Development</u>

<u>Partners, L.P.</u>, 38 F.3d 211, 221-22 (5th Cir. 1994) (acknowledging

that <u>Wingate</u> involved shareholders bringing direct actions against

corporations, but concluding that the existence of a Texas statute

---

[18]Amended Notice of Removal, Docket Entry No. 12, p. 9.

[19]<u>Id.</u>

[20]<u>Id.</u>

-16-

allowing limited partners to sue their partners derivatively on behalf of the partnership suggests that <u>Wingate</u>'s rationale applies to limited partnerships as well as to corporations).  Thus defendants contend that plaintiffs are asserting claims they cannot bring directly on their own behalf but must bring derivatively on behalf of Haverhill Chemicals LLC ("Haverhill LLC").

Plaintiffs respond that defendants made the misrepresentations alleged in their petition before Haverhill LLC even existed to induce plaintiffs to create and fund Haverhill LLC for the purpose of investing in the chemical plant.[21]  Plaintiffs also respond that they "seek their investment damages (tens of millions), not the diminution in value of Haverhill [] LLC (which was hundreds of millions of dollars)."[22]  Asserting that they would not have invested in Haverhill LLC but for the defendants' misrepresentations, plaintiffs argue that they are injured individual parties.[23]

In pertinent part plaintiffs allege that in 2010 Sunoco owned two chemical plants capable of producing phenol, one in Frankford, Pennsylvania, and the other in Haverhill, Ohio.  When Sunoco decided to exit the phenol market and sell the chemical plant in Haverhill, Ohio, one of the named plaintiffs, Goradia Capital,

---

[21]Plaintiffs' Motion to Remand, Docket Entry No. 14, p. 10.

[22]<u>Id.</u> at 8 n. 6.

[23]<u>Id.</u> at 10.

"approached Sunoco because the Chemical Plant was viewed as fitting
within the Goradia Capital chemical business investment portfolio.
Goradia Capital first reached out to Sunoco in November 2010, and
first visited Sunoco, principally David Sexton, in December 2010."[24]
Plaintiffs allege that "[i]n order to induce the Goradia Plaintiffs
into investing to create a company to purchase the Chemical Plant,
Sunoco created documents that made a number of material statements
that were false and misleading, and also designed to be relied upon
by the Goradia Plaintiffs."[25]   Plaintiffs allege that

> Defendants Sexton and King were Sunoco's primary
> representatives during the sale process, and were
> responsible for and made, along with Sunoco, the
> misrepresentations set forth below.  Defendant Sexton did
> much of the negotiation and coordinated the due diligence
> process, while defendant King managed the day-to-day due
> diligence and was responsible for and managed Sunoco's
> data collection for due diligence.[26]

Plaintiffs allege that the defendants, including King and Sexton,
embodied the misrepresentations in a Confidential Information
Memorandum dated Fall 2010,[27] a Haverhill Plant PowerPoint
Presentation,[28] and a Haverhill Management Presentation ("Project

--------

[24]Original Petition, Exhibit A to Amended Notice of Removal,
Docket Entry No. 12-2, p. 7 ¶ 27.

[25]Id. at ¶ 30.

[26]Id. at 8 ¶ 32.

[27]Id. at 8-11 ¶¶ 33-45.

[28]Id. at 11 ¶¶ 46-48.

Purple").[29]   Plaintiffs allege that "Sunoco designated defendants Sexton and King to interact with [them] during the due diligence process,"[30] that "[d]efendant King was responsible in April 2011 for collecting the data to respond to the Plaintiffs' due diligence requests regarding the BPA expansion project,"[31] and that "[d]efendant King was responsible for gathering and providing capital expenditure information as part of the due diligence."[32] Plaintiffs allege:

> 62.   Additionally, there was a Due Diligence Q&A Log to address material issues regarding the potential transaction.   Both defendants Sexton and King were responsible for Sunoco's responses on the Q&A logs.   With respect to the Chemical Plant's "Manufacturing Operations," the very first question that the Goradia Plaintiffs asked Sunoco was: "What are the top 10 reliability concerns?  What monies were spent in the last 3 years to address prior concerns?"  This was listed as a "High Priority," and was submitted early in the process, on February 24, 2011.   Sunoco responded only "T701.   Addressed in meeting," and listed no other reliability concerns.

> 63.   That Q&A Log's second question was: "Would like to understand the operating rates versus the mechanical rates of the facility."  This was again listed as "High Priority," and asked on February 24, 2011.   Sunoco falsely responded "In phenol on-stream time is approx. 95%, approx. 94% for BPA.   Discussed in meeting."

> 64.   That Q&A Log's third question was: "What are the top Operation concerns?   What issues in this regard have

---

[29]Id. at 11-12 ¶¶ 49-50.

[30]Id. at 12 ¶ 51.

[31]Id. at 9 ¶ 40.

[32]Id. at 14 ¶ 60.

arisen in the past 3 years?"  Again, "High Priority" and
requested on February 24, 2011.

65.  The Goradia Plaintiffs tried in at least three
different ways to get at the information regarding
reliability and needed capital expenditures.   But,
Defendants hid the information.  In November 2010, for
example, defendant Sexton had made a presentation in
which actual BPA production was 151 MMlbs, with potential
production of 186 MMlbs; "BPA Plaint Reliability"
accounted for 23 of the 35 MMlbs of lost production, by
far the dominant cause, more than 3X higher than the next
highest cause.  Defendants did not disclose any of the
issues set forth herein in response to any of these three
primary Manufacturing Operations questions, either in
written response or at any of the due diligence meetings.

66.  Based on the (mis)information provided by Defendants
as part of the due diligence process, and in light of its
financial analysis of the expected returns on this
potential investment as compared to other possible
investments, Goradia Capital and its investors understood
and concluded that the Chemical Plant, given normal
maintenance and capital expenditures, would be a
profitable and desirable investment.[33]

Plaintiffs allege that "[i]n June 2011, in order to move

forward, Goradia Capital and the Plaintiffs created (but did not

fund) Haverhill Chemicals LLC, a Texas LLC with its principal place

of business in Houston.  Plaintiffs owned the membership interests

of Haverhill Chemicals LLC."[34]   Plaintiffs allege that

71.  Once created, Haverhill Chemicals LLC entered into
an Asset Purchase Agreement, dated August 15, 2011, with
Sunoco, Inc.  (R&M) as Seller, and Sunoco, Inc., as
Guarantor.

72.  At the request of Sunoco to demonstrate its
financial wherewithal, the Plaintiffs transferred their

---

[33]Id. at 15-16 ¶¶ 62-66.

[34]Id. at 16 ¶ 67.

$30 million investment to fund Haverhill Chemicals at the end of July of 2011, and the transaction closed on October 31, 2011.[35]

Under Texas law "a corporate agent is personally liable for his own fraudulent or tortious acts." Miller v. Keyser, 90 S.W.3d 712, 717 (Tex. 2002). Thus, insofar as plaintiffs base their claims for fraud, fraudulent inducement to invest, and negligent misrepresentation on misrepresentations allegedly made by defendants, including King and Sexton, to plaintiffs in 2010 and 2011 **before** Haverhill LLC was created in June of 2011, and **before** plaintiffs invested in Haverhill LLC in July of 2011, there is a reasonable basis for the court to predict that plaintiffs (1) might be able to recover against defendants King and Sexton, and (2) might be able to overcome defendants' assertion of lack of standing because plaintiffs' claims allege direct — not derivative — causes of action that plaintiffs — not Haverhill LLC — have standing to assert.[36] See Wingate, 795 S.W.2d at 719 (recognizing claims for fraud "to enter into [a] business relationship" as direct, individual claims, not derivative claims). See also Wesolek v. Layton, 871 F.Supp.2d 620, 633 (S.D. Tex. 2012)

---

[35]Id. at 17, ¶¶ 71-72.

[36]See Plaintiffs' Motion to Remand, Docket Entry No. 14, p. 2 ("This case arises out of Defendants' fraudulent statements to Plaintiffs that caused them to invest in Haverhill Chemicals LLC, a fraud that occurred substantially before Haverhill Chemicals LLC (not Plaintiffs) signed the [Asset Purchase] Agreement in August 2011.").

(recognizing that individual plaintiffs could bring direct claims for common law fraud, as opposed to derivative claims on behalf of the LLC, based on misrepresentations made before they purchased their interests in the LLC as an inducement to invest); Mallia v. PaineWebber, Inc., 889 F.Supp. 277, 282-83 (S.D. Tex. 1995)("[I]t is clear that Plaintiffs do not seek any relief for injury allegedly suffered by the partnerships themselves.  Rather, the Original Complaint consistently alleges that the partnerships were unsuitable investment vehicles for the Plaintiffs and that the Plaintiffs' decisions to invest in the partnerships were improperly induced by fraudulent statements, negligent misrepresentations, or combinations of both.").  The court therefore concludes that defendants have failed to establish that the non-diverse defendants, King and Sexton, have been improperly joined because plaintiffs cannot establish a cause of action against them in state court due to lack of standing.  See Cuevas, 648 F.3d at 249.  See also Smallwood, 385 F.3d at 573.


          (b)  Disclaimer of Reliance

     Defendants argue that plaintiffs are unable to establish a cause of action in state court against the non-diverse defendants, King and Sexton, because

          to plead and prove a cause of action for fraud and
          negligent misrepresentation against King and Sexton,
          plaintiffs must show that they (1) were entitled to — and
          did — rely on extra-contractual misrepresentations made

by King and Sexton, and (2) they were damaged [by] those alleged misrepresentations.[37]

Defendants argue that plaintiffs are unable to establish that they relied on any misrepresentations made by King or Sexton because the Asset Purchase Agreement entered between Sunoco and Haverhill LLC on August 15, 2011, disclaimed reliance on all extra-contractual representations.[38]  Asserting that they were neither parties nor signatories to the Asset Purchase Agreement between Sunoco and Haverhill LLC, plaintiffs argue that they have not disclaimed reliance on any of the alleged misrepresentations.[39]

Acknowledging that "[p]laintiffs are not parties to the Agreement,"[40] defendants nevertheless argue that plaintiffs' "assert claims that arise out of the [Asset Purchase] Agreement."[41]  For the reasons stated in § II.B.1, above, the court has already concluded that the plaintiffs' claims arise from misrepresentations that defendants allegedly made before plaintiffs created or funded Haverhill LLC and, therefore, before the Haverhill LLC and Sunoco entered the Asset Purchase Agreement.  Defendants have not cited

---

[37]Amended Notice of Removal, Docket Entry No. 12, p. 10.

[38]Id.

[39]Plaintiffs' Motion to Remand, Docket Entry No. 14, pp. 6, 11-13.

[40]Defendants' Response to Plaintiffs' Motion to Remand, Docket Entry No. 16, p. 10.

[41]Id.

and the court has not found any authority supporting their contention that a contractual disclaimer of reliance can preclude a non-party to the contract from pursuing a claim for fraud or negligent misrepresentation.  See First Trust Corp. TTEE FBO v. Edwards, 172 S.W.3d 230, 239 (Tex.App.—Dallas 2005, no pet.)("It is axiomatic that '[a] release does not bind one who is not a party to it.").  Because defendants acknowledge that plaintiffs are not parties to the Asset Purchase Agreement, and because defendants have failed to cite any authority in support of their contention that a contractual disclaimer of reliance precludes non-parties, the court concludes that there is a reasonable possibility that plaintiffs might survive this affirmative defense and therefore that there is no improper joinder based on this argument.

        (c)   Limitations

    Asserting that the alleged misrepresentations and resulting investments were made no later than 2011, defendants argue that plaintiffs' claims are all time-barred by the relevant statutes of limitation.[42]  Plaintiffs argue that defendants cannot carry their burden to establish that there is no possibility of recovery against the non-diverse defendants based on limitations because the discovery rule and the doctrine of fraudulent concealment apply to

_____

[42]Amended Notice of Removal, Docket Entry No. 12, pp. 15-16.

toll limitations.[43]  Plaintiffs also argue that defendants have not pleaded limitations, and that based on the discovery rule there is more than a possibility that they will survive defendants' limitations defense.[44]

Texas law governs limitations on the plaintiffs' claims.  See Tex. Civ. Prac. & Rem. Code § 16.004(a)(4) (fraud and fraudulent inducement to invest — four years); id. § 16.003(a) (negligent misrepresentation — two years).[45]  Because the alleged misrepresentations on which plaintiffs base their claims occurred in 2010 and 2011 in connection with the creation and funding of Haverhill LLC for the purpose of purchasing the Chemical Plant, and because plaintiffs did not file suit until February 11, 2016 — outside both the two-year and the four-year limitations periods — defendants contend that plaintiffs' claims are all time-barred. Defendants argue:

---

[43]Plaintiffs' Motion to Remand, Docket Entry NO. 14, pp. 13-20.

[44]Plaintiffs' Reply in Support of Motion to Remand, Docket Entry No. 17, pp. 12-15.

[45]Although plaintiffs also assert claims for fraudulent concealment, fraudulent concealment is not a cause of action under Texas law but, instead, a doctrine for tolling the statute of limitations.  See Colonila Penn Ins. v. Market Planners Ins. Agency Inc., 157 F.3d 1032, 1035 (5th Cir. 1998) ("Fraudulent concealment tolls the statute of limitations until the claimant discovers or with reasonable diligence should have discovered the fraud.") (citing Computer Associates International, Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996), Ruebeck v. Hunt, 176 S.W.2d 738, 739 (Tex. 1943), and Borderlon v. Peck, 661 S.W.2d 907 (Tex. 1983)).

Plaintiffs allege that fraudulent statements were made prior to Plaintiffs' creation of Haverhill LLC. . . Thus, the fraudulent statements must have been made **prior** to close of the transaction between Haverhill LLC and Sunoco, which Plaintiffs allege occurred on October 31, 2011. . . Thus, at the very least, the statute of limitations for Plaintiffs' fraud claim expired on October 30, 2015. But plaintiffs filed suit on February 11, 2016. . . And because the statute of limitations has passed and Plaintiffs chose not to plead the discovery rule or fraudulent concealment, Plaintiffs can assert no claim for fraud, "fraudulent inducement to invest," fraudulent concealment, or negligent misrepresentation against Sexton and King.[46]

Asserting that their claims did not accrue until the fraud should have been discovered by reasonable diligence, plaintiffs argue that they could not reasonably have discovered defendants' misrepresentations until

January 2015 [when], after [a] number of significant equipment failures and the very unfortunate death of [an] employee, information was unearthed at the Chemical Plant demonstrating that Defendants knew that their representations regarding capital expenditures and reliability concerns were false and misleading.[47]

### (1)   Accrual Date for Fraud Claims

"[W]here fraud is alleged, [the Texas Supreme Court] ha[s] granted the claimant the benefit of deferring the cause of action

---

[46]Defendants' Response to Plaintiffs' Motion to Remand, Docket Entry No. 16, p. 7.

[47]Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 12-2, p. 19 ¶ 85. See also Plaintiff's Motion to Remand, Docket Entry No. 14, pp. 13-20; Plaintiffs' Reply in Support of Motion to Remand, Docket Entry No. 17, pp. 12-15; Plaintiffs' Sur-Reply in Support of Motion to Remand, Docket Entry No. 21, pp. 2-4.

until the claimant discovered or should have discovered the fraud." Computer Associates. International, Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996). In a fraud case the "statute of limitations does not commence to run until the fraud is discovered or until it might have been discovered by the exercise of reasonable diligence." Little v. Smith, 943 S.W.2d 414, 420 (Tex. 1997) (citing Ruebeck, 176 S.W.2d at 739). See also Exxon Corp. v. Emerald Oil & Gas Co., L.C., 348 S.W.3d 194, 216 (Tex. 2011); Estate of Stonecipher, 591 S.W.2d 806, 809 (Tex. 1979) ("Texas courts have consistently held that fraud vitiates whatever it touches, and that limitations begin to run from the time the fraud is discovered or could have been discovered by the defrauded party by exercise of reasonable diligence. Reasonable diligence is a question of fact." (citations omitted)).

The misrepresentations about which plaintiffs complain allegedly occurred in late 2010 and early 2011 before plaintiffs created and funded Haverhill LLC in June and July of 2011 to purchase the Chemical Plant, i.e., more than four years before plaintiffs filed this lawsuit. Defendants argue that plaintiffs are unable to establish a cause of action in state court against the non-diverse defendants, King and Sexton, because plaintiffs' claims are time barred. The question of whether plaintiffs' claims are, in fact, time barred turns on when the plaintiffs discovered or, by the exercise of reasonable diligence, should have discovered

the alleged fraud.   Plaintiffs allege in their Petition that they did not know and could not have known of defendants' fraud until January of 2015.   This argument raises the possibility that their claims did not accrue until that date.   The Fifth Circuit has recognized that determining when a plaintiff was on inquiry notice of fraud is a "fact-intensive inquiry . . . typically appropriate for consideration by a jury."   Margolies v. Deason, 464 F.3d 547, 553 (5th Cir. 2006).   Unless the allegations are such that reasonable minds might not differ as to their effect, the question of whether a party has exercised diligence in discovering fraud is for the jury.   Id. (quoting Ruebeck v. Hunt, 176 S.W.2d 738, 740 (Tex. 1944).   Accordingly, the court concludes that defendants have failed to carry their burden of establishing that the non-diverse defendants, King and Sexton, were improperly joined on this basis.

### (2)   Accrual Date for Negligence Claims

For claims of negligent misrepresentation the general rule is that "'a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.'" TGI Ins. Co v. Aon Re, Inc., 521 F.3d 351, 355 (5th Cir. 2008) (quoting S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996)).   The parties do not appear to dispute that, if this rule applies, the plaintiffs' negligence misrepresentation claims are time barred.

-28-

The plaintiffs invoke the discovery rule exception to this general rule.   Defendants respond that plaintiffs have affirmatively pleaded themselves out of court against King and Sexton because they did not expressly plead the discovery rule.[48]

Under Texas law the discovery rule is an exception to the general rule that a cause of action accrues when a wrongful act causes some legal injury.  <u>TIG Ins.</u>, 521 F.3d at 357.   Under the discovery rule the statute of limitations will run "not from the date of the [defendant's] wrongful act or omission, but from the date the nature of the injury was or should have been discovered by the plaintiff."  <u>Weaver v. Witt</u>, 561 S.W.2d 792, 793-94 (Tex. 1977) (per curiam).  <u>See also</u> <u>Murphy v. Campbell</u>, 964 S.W.2d 265, 269-70 (Tex. 1997).   The discovery rule tolls the statute of limitations only if the injury is both inherently undiscoverable and objectively verifiable.  <u>K3C Inc. v. Bank of America, N.A.</u>, 204 Fed. Appx. 455, 462 (5th Cir. 2006) (per curiam) (citing <u>HECI Exploration Co. v. Neel</u>, 982 S.W.2d 881, 886 (Tex. 1998)).   An injury is inherently undiscoverable if it is of a type not generally discoverable by the exercise of reasonable diligence. <u>See</u> <u>HECI Exploration Co.</u>, 982 S.W.2d at 886.

Although Texas procedure does not require plaintiffs to plead the discovery rule until a defendant pleads the affirmative defense

---

[48]Defendants' Response to Plaintiffs' Motion to Remand, Docket Entry No. 16, pp. 5-7; Defendants' Sur-Reply to Plaintiffs' Motion to Remand, Docket Entry No. 23, pp. 4-5.

of limitations,[49] plaintiffs contend that they have adequately pleaded the discovery rule under Texas' fair notice pleading standard by alleging that they could not have discovered defendants' misrepresentations until January of 2015, when after [a] number of significant equipment failures and the very unfortunate death of [an] employee, information was unearthed at the Chemical Plan demonstrating that Defendants knew that their representations regarding capital expenditures and reliability concerns were false and misleading.[50]

Under the Rule 12(b)(6) standard, "[i]t is well settled . . . that in order for a defendant to prevail on the basis of limitations at the pleadings stage, the plaintiff[s] must normally plead [themselves] out of court." <u>Funches v. City of Dallas</u>, 1999 WL 261842, at *2 (N.D. Tex. 1 Apr. 28, 1999) (citing <u>Whirlpool Fin.</u>

---

[49]Under Texas procedure plaintiffs are not required to plead the discovery rule until a defendant pleads the affirmative defense of limitations. "A party seeking to avail itself of the discovery rule must therefore plead the rule, either in its original petition or in an amended or supplemented petition in response to defendant's assertion of the defense as a matter in avoidance." <u>Woods v. William M. Mercer, Inc.</u>, 769 S.W.2d 515, 518 (Tex. 1988). Once the discovery rule is pleaded, the defendant must negate the exception. <u>Pustejovsky v. Rapid-Am. Corp.</u>, 35 S.W.3d 643, 646 (Tex. 2000) ("When, as here, the plaintiff pleads the discovery rule as an exception to limitations, the defendant has the burden of negating that exception as well."). Because defendants have filed an answer to plaintiffs' original petition but have not yet pleaded the affirmative defense of limitations, plaintiffs are not yet obligated to plead the discovery rule.

[50]Original Petition, Exhibit A to Amended Notice of Removal, Docket Entry No. 12-2, p. 19 ¶ 85.

Corp. v. GN Holdings, Inc., 67 F.3d 605, 608 (7th Cir. 1995)
(holding that "if a plaintiff pleads facts that show its suit
barred by a statute of limitations, it may plead itself out of
court under a Rule 12(b)(6) analysis")).  Plaintiffs have not done
so here.  In evaluating whether the non-diverse defendants, King
and Sexton, have been improperly joined,

> the court does not need to say for sure what the state
> court finally will decide on applicability of the
> discovery rule if the case is remanded; rather, the issue
> is whether this court has been persuaded at this point in
> time that it can predict that [] plaintiff[s] might be
> able to recover against [defendants] on plaintiffs'
> pleaded cause[s] of action.

Meagher v. Goodfriend, 2011 WL 1252874, at *5 (N.D. Tex. 1 Apr. 4,
2011).  Because plaintiffs have alleged that with the exercise of
reasonable diligence they could not have discovered defendants'
misrepresentations before January of 2015, the court cannot predict
that the discovery rule will not apply or that the plaintiffs'
claims for common law fraud, fraudulent inducement to invest, and
negligent misrepresentation will be deemed time barred by in a
Texas court.  Thus the court concludes that defendants have failed
to carry their heavy burden of establishing that the non-diverse
defendants, King and Sexton, were improperly joined on this basis.

### III.  Conclusions and Order of Remand

For the reasons stated in § II, above, the court concludes
that defendants have failed to carry their burden of establishing

the existence diversity jurisdiction.   Accordingly, Plaintiffs'
Motion to Remand (Docket Entry No. 14) is **GRANTED.**

  This action is **REMANDED** to the 333rd District Court of
Harris County, Texas.   The Clerk of this court is directed to
promptly send a copy of this Memorandum Opinion and Order to the
District Clerk of Harris County, Texas.

  **SIGNED** at Houston, Texas, on this the 4th day of August, 2016.

                   SIM LAKE
          UNITED STATES DISTRICT JUDGE